## GLOBE INDEMNITY CO. v. NODLERE.
### No. 940.

Circuit Court of Appeals, Tenth Circuit.

April 4, 1934.

R. D. Hudson, of Tulsa, Okl. (W. E. Hudson and R. V. Lewis, both of Tulsa, Okl., on the brief), for appellant.

Frank Hickman, of Tulsa, Okl. (Irvine E. Ungerman, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

The parties will be denominated as they were in the court below. Plaintiff was struck and injured by an automobile belonging to the city of Tulsa, in Oklahoma, and operated by W. L. Langford, one of its employees. She instituted suit against Langford and the city in the state court to recover damages for such injury. A directed verdict was returned and judgment entered in favor of the city. She recovered judgment against Langford for the sum of $9,000. Execution issued thereon, and the sheriff returned it unsatisfied because no property was found upon which it could be levied. Thereafter plaintiff instituted this action in the state court to recover from the defendant the amount of such unpaid judgment on a policy of liability insurance issued by the defendant to the city. The case was seasonably removed to the United States court for the Northern district of Oklahoma. At the conclusion of all evidence, each party moved for an instructed verdict. Plaintiff's motion was sustained; that of defendant was overruled. From the judgment rendered in such circumstances, this appeal was perfected.

The single contention presented is that the court erred in finding and concluding that Langford was driving the automobile at the time of the accident with the permission of the city. The action of both parties in requesting instructed verdicts amounted to a waiver of trial by jury, thereby submitting to the court all disputed questions of fact, or affirming that there was no disputed issue of fact. Our review, in the circumstances, is confined to an inquiry with respect to the correctness of the court's conclusion of law and whether there is evidence to support it. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Empire State Cattle Co. v. A., T. & S. F. R. Co., 210 U. S. 1, 28 S.

Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; First Nat. Bank v. First Utah Nat. Bank (C. C. A.) 15 F.(2d) 913; Hover & Co. v. Denver & R. G. W. R. Co. (C. C. A.) 17 F.(2d) 881; Bank of Union v. Fidelity & Cas. Co. (C. C. A.) 62 F.(2d) 1040; General Tire Co. v. Standard Acc. Ins. Co. (C. C. A.) 65 F.(2d) 237.

The policy contains the following provision: "That this policy shall apply in the same manner and under the same conditions as it applies to the 'named assured' to any person, or persons, while riding in, or legally operating such automobile, and to any person, firm or corporation (except an automobile garage, repair shop, automobile sales agency, or service station, or the agents or employees thereof) legally responsible for the operation thereof, provided such use, or operation is with the permission of the 'named assured,' or, if the 'named assured' is an individual, with the permission of any adult member of the 'named assured's' household, other than a chauffeur or a domestic servant."

The automobile was owned by the city and was covered by the policy, then in force. That is conceded. Langford had been employed in the water department of the city for about ten years. He held the position of truck helper in that department. His duties were to repair water mains. He went to and from his work on a truck driven by another employee. He was not a truck driver.

The general foreman of the city warehouse and garage, having jurisdiction in the premises, promulgated a rule forbidding employees to use automobiles belonging to the city except on business for the water department. Despite such rule, it had long been the custom and policy for employees to use such automobiles for their own business or pleasure, first obtaining permission so to do from the superintendent, foreman, or person in charge. It likewise had been the custom for a long time to select from the employees of the city in the water department, numbering about one hundred, one person to act as foreman and four or five to serve as laborers on holidays and election days. They were selected by drawing names from a hat or box. The other employees were off duty on those days. An election was held on April 5, 1932, the day of the accident. Langford was selected, through the method outlined, to be in charge of the warehouse on that day. He was the person highest in authority on that particular day. At about 4 o'clock in the afternoon he drove the automobile from the warehouse to his residence, got his wife, and the two of them went to the polls and voted. After their return home, he drove to the home of a friend and visited for about an hour. He then started back to the warehouse, and the accident occurred on the way. The car was not ordinarily kept at the warehouse. It was there for repairs on the occasion in question. It was usually driven by an employee at the city hall.

It is clear that, under the quoted provision contained in the policy, defendant is not liable unless Langford was operating and using the automobile with the permission of the city. The plain language of the policy leads unerringly to that conclusion. Frederiksen v. Employers' Liability Assur. Corp. (C. C. A.) 26 F.(2d) 76; Trotter v. Union Indemnity Co. (C. C. A.) 35 F.(2d) 104; Denny v. Royal Indemnity Co., 26 Ohio App. 566, 159 N. E. 107; Cypert v. Roberts, 169 Wash. 33, 13 P.(2d) 55; Nicholas Independence Indemnity Co., 165 A. 868, 11 N. J. Misc. 344. But that permission may be either express or implied.

That Langford did not have express permission to drive the automobile for his personal use is beyond question. No one asserts the contrary. It remains to be ascertained whether he had implied permission to do so. He knew of the rule forbidding employees to use automobiles belonging to the city, except on business for the water department. He testified that at the time he took the automobile in question he did it contrary to the rule and without authority. Plaintiff contends that, since he was in charge of the warehouse on that particular day, selected thereto in the manner previously reviewed, he was vested with power under the custom of long duration to grant permission to other employees to take city automobiles for their private use, and that the act of taking this one for his own use must be held to have been done with the same binding permission. The case of U. S. F. & G. Co. v. Hall, 237 Ky. 393, 35 S.W.(2d) 550, and others similar in effect are relied upon to sustain the contention. With that doctrine, appropriately applied to facts evoking its application, we have no quarrel, but it is unavailing here because the uncontradicted testimony was in effect that, while Langford was in charge of the warehouse, his duties were confined to emergency work repairing breaks and leaks in water mains and burst meters; that he had authority to use trucks and automobiles belonging to the city only

for those purposes. It is plain from the testimony and all reasonable inferences to be drawn from it that a small skeleton crew were selected for emergencies caused by bursts, breaks, and leaks occurring on election day. That is all they were expected or commissioned to do. Langford was foreman of that crew, not the general foreman, but his duties and prerogatives in the use of trucks and automobiles belonging to the city were confined to that purpose. That conclusion is inescapable from a careful review of the evidence. In the circumstances, he could grant permission to other employees to use the trucks and automobiles for that purpose only, and his rightful use of them could not extend beyond that scope. It necessarily follows that he was driving the automobile without permission, either express or implied, and, since he lacked permission to make the trip in it, the question of deviation from a permitted use is not presented and needs no attention.

The judgment is reversed, and the cause remanded, with instructions to proceed in accordance with the views expressed herein.

Reversed and remanded.