## OLGIN v. EMPLOYERS MUT. CASUALTY CO.

### No. 11989.

Court of Civil Appeals of Texas.
San Antonio.
March 15, 1950.

Rehearing Granted March 15, 1950.

Rehearing Overruled April 12, 1950.

Morriss, Morriss & Boatwright, San Antonio, for appellant.

Eskridge & Groce, San Antonio, Charles R. Hancock, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Pauline V. Olgin, a feme sole, against Employers Mutual Casualty Company, seeking to recover the sum of $2,000, which was the amount of a judgment obtained by her against one Monico Torres as a result of a collision between a car driven by her and a truck driven by Torres, the truck belonging to National By-Products, Inc., and being driven by Torres at the time of the collision allegedly with the permission of National By-Products, Inc.

The Employers Mutual Casualty Company was the carrier of the casualty insurance of National By-Products, Inc. The insurance policy contained what is commonly called an omnibus coverage clause, which provides, "The unqualified word 'insured' wherever used * * * includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

Whether or not Pauline V. Olgin should be entitled to recover herein depends entirely upon whether or not Monico Torres was using the truck with the permission of National By-Products, Inc., within the meaning of the omnibus coverage clause of the insurance policy.

The trial was to the court without the intervention of a jury and resulted in judgment that Pauline V. Olgin take nothing. From that judgment Pauline V. Olgin has prosecuted this appeal.

Appellant, by her first four points, presents the contention that the trial court erred in finding as a fact that Monico Torres was using the truck of National By-Products, Inc., without its permission at the time of the collision and was therefore not an additional insured under the omnibus coverage clause of the insurance policy issued by appellee to National By-Products, Inc.

■■ We are of the opinion that the trial court properly held that Torres was not using the truck at the time of the collision with the permission of National By-Products, Inc., and that the finding is supported by the evidence in this case.

Torres had been using a truck of National By-Products, Inc., for whom he worked for more than a year, to go to and from his work. According to the testimony of H. M. Dunham, general manager of the National By-Products, Inc., Monico Torres had explicit instructions to drive the truck directly to his home from his work and to leave the truck there until the next morning and then to drive it directly back to the plant, unless he was given orders to make pick-ups of material on his way back to the plant. Torres also had instructions not to use the truck on any personal business. Up until the time of the collision, Dunham had never heard of Torres' violating these instructions.

On the 15th day of July, 1947, Monico Torres left the plant about 6 P. M., in a truck belonging to National By-Products, Inc., to go to his home, under the above instructions. The plant was about two miles south of the City of South San Antonio on the Quintana Road. Torres lived at 118 Hall Street, which, speaking generally, is about two miles north of South San Antonio. There was no bus service from Torres' home to the plant and to enable him to travel from his home to his work and return the company permitted him to use the truck. On the date mentioned Torres did not go directly to his home, but deviated from that course. He first stopped at a pool hall on South Zarzamora Street and played pool for some two hours; he then left the pool hall and went out Guadalupe Street to Chupaderas Street, which was beyond and west of his home. He stayed at a place out there until it closed, about 11:30 P. M. He then left this place and drove in the direction of downtown San Antonio, but when he arrived at Laredo Street he again started in the direction of his home, and when he arrived at the corner of Frio and El Paso Streets he had the collision with appellant, Mrs. Pauline V. Olgin. This intersection is about two miles from Torres' home. The collision occurred about midnight. If Torres had gone directly home he should have arrived there about 6:30 P. M., but, due to his meanderings he had the collision some three and one-half hours later and he still had not reached home. Thus we see that Torres not only did not have permission of the owner to use the truck at the time and place and for the purpose he was using it, but he was using the truck in direct violation of his explicit instructions to drive straight home and not to use it for his personal business. If the evidence is not conclusive to this effect, certainly it is sufficient to support the trial judge's finding

that the truck was being used at the time of the collision without the consent of National By-Products, Inc.

The exact point raised here has never been passed upon in this State, and when we look to the decisions of other jurisdictions we find considerable lack of harmony. The best treatise upon the subject that we have read is the Annotations found in 5 A.L.R.2d page 600 to page 666. It is there pointed out that in the United States three rules are to be found with reference to when an employee is covered by the omnibus coverage clause of a liability insurance policy while driving an automobile owned by the employer. There are three different rules laid down by the authorities: (1) The strict or conversion rule; (2) The liberal rule; (3) The intermediate or minor deviation rule. 5 A.L.R.2d at page 622, § 10.

These rules are defined and described by the annotator as follows:

"First, the strict or conversion rule: For the use of the car to be with the permission of the assured within the meaning of the omnibus clause, the permission, express or implied, must have been given to the employee not only to the use of it in the first instance, but also to the particular use being made of the car at the time in question. In other words, the automobile must have been used for a purpose reasonably within the scope of the permission given, during the time limits expressed, and within the geographical limits contemplated.

"Another view is the so-called liberal rule: The employee need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is 'with permission' though that use may be for a purpose not contemplated by the assured when he parted with possession of the vehicle. This rule is based on the theory that the insurance contract is as much for the benefit of the public as it is for the assured and that it is undesirable to permit litigation as to details of the permission and use.

"The third rule is the moderate or 'minor deviation' rule: A slight deviation from the scope of the authority or permission granted will not be sufficient to exclude the employee from the coverage under the omnibus clause, but a material deviation will be held to constitute a use of the automobile without the employer's implied permission. This view is obviously difficult of application, because the question to be answered is whether the deviation from the authorized use was slight or gross, and that turns on the facts of each case. The extent of the deviation in actual distance, the purpose for which the vehicle was given, and other factors, must be taken into consideration."

The following statement is found in 5 A.L.R.2d at page 625, with reference to which rule is followed in Texas: "The third and final group is formed by those jurisdictions which take a middle ground and hold it necessary to consider the extent and effect of the particular deviation involved, material deviations voiding the initial permission and minor deviations leaving such permission unaffected. Among the states in this group are Georgia, Kentucky, Ohio, Oklahoma, Pennsylvania, Texas, and Washington. Probably belonging in this group also are Idaho, Minnesota, and Virginia, and the Federal courts before Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487]."

In support of this statement, the following Texas cases are cited: "Texas.—Salitrero v. Maryland Casualty Co., Tex.Civ.App.1945, 109 S.W.2d 260; Snyder v. St. Paul Mercury Indem. Co., Tex.Civ.App. 1945, 191 S.W.2d 107; Ohio Casualty Ins. Co. v. Plummer, D.C.Tex.1935, 13 F.Supp. 169."

We are not sure that these cases definitely commit this State to the intermediate or minor deviation rule, but it seems to us that some rule between the two extreme rules, that is, the strict and liberal rules, should be followed. It does not seem just to declare that there is no coverage when the employee has made a minor deviation from the scope of his original permission and, on the other hand, it likewise does not seem just to declare there is coverage provided where there is initial permission to use the automobile, regardless of how far the employee may have deviated from

the scope of his original permission or the purpose for which it was granted.

However, regardless of the variations in the several rules and regardless of which one may be applied, it occurs to us that there are facts in the case at bar that justify the trial court in finding that Torres was not covered by reason of the omnibus coverage clause at the time he had the collision with appellant. Torres was using the truck in violation of explicit instructions given him with reference to the use to be made of the truck. He was violating the explicit instructions to drive the truck directly to his home, and he was also violating the expressed instruction not to use the truck for personal business. In 5 A.L.R.2d, at page 622, § 9, it is said: "* * * a distinction must be made * * * where the employee puts the automobile to a use expressly forbidden by the employer. It is clear that the assumption of an implied permission for the use to which the automobile was put by the employee is made considerably more difficult where such use was expressly prohibited by the employer."

It is also stated in § 20, at page 651, 5 A.L.R.2d, that: "Where the employer has expressly forbidden his employee to use the employer's automobile for his own personal purposes, such use of the automobile by the employee in violation of orders is not deemed to be one with the permission of the employer within the meaning of the omnibus clause of the liability insurance policy."

Cited in support of this text are many cases, among which are the following: Wilson v. Farnsworth, La.App., 4 So.2d 247; Waddell v. Langlois, La.App., 158 So. 665; Standard Accident Ins. Co. v. Rivet, 5 Cir., 89 F.2d 74; Jordan v. Shelby Mut. Plate Glass & Casualty Co., 4 Cir., 142 F.2d 52, affirming, D.C., 51 F.Supp. 240; Johnson v. Maryland Casualty Co., D.C. Wis.1940, 34 F.Supp. 870; Hodges v. Ocean Accident & Guaranty Corp., 66 Ga.App. 431, 18 S.E.2d 28, certiorari denied 316 U.S. 693, 62 Sup.Ct. 1299, 86 L.Ed. 1763, which has rehearing denied 317 U.S. 705, 63 Sup. Ct. 25, 87 L.Ed. 563; Trzich v. United States Casualty Co., 52 Ohio App. 246, 3 N.E.2d 684; Globe Indemnity Co. v. Nodlere, 10 Cir., 69 F.2d 955.

There are cases to the contrary, but we regard them as against the weight of authority and we therefore decline to follow them.

Under all of the facts and circumstances in this case, we are of the opinion that the trial judge did not err when he found from the evidence that Torres did not have permission from his employer to use the truck at the time of the collision with appellee.

The case relied upon most strongly by appellant is that of Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500. In that case the employee had permission to use the automobile to go to his home and change his clothes and to hurry back. The case is distinguishable from this case in that there the employee did not have any instructions to go straight to his home, nor did he have any instructions not to use the automobile for his personal business. Further, it is not shown in the Dickinson case that the trier of facts had found under the evidence that there was no permission to use the automobile.

Appellant also relies upon the case of Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. This case is based upon the liberal rule that only initial permission to use the automobile is all that is required and that regardless of how far the employee may depart from the scope of the initial permission there is, nevertheless, coverage under the omnibus coverage clause. This does not represent the majority rule in the United States, and we refuse to follow this case. Furthermore, the Stovall case does not involve the use of the automobile contrary to the expressed instructions of the employer.

Appellee contends that there should be no liability here on its part because M. Torres did not deliver to it the copy of the citation served upon him in the original suit, as he was required to do under the provisions of the indemnity policy issued by appellee. We overrule this contention.

556

Torres was served with a citation on August 4, 1947, and on August 14, 1947, appellee secured from him a non-waiver agreement. Appellee's attorneys appeared at the trial and defended the suit as to National By-Products, Inc., and used M. Torres as a witness. Under such facts appellee fails to show that it was injured in any way by Torres' failure to deliver to it the copy of the citation served upon him.

Appellee's motion for a rehearing is granted.

The judgment of this Court rendered on December 28, 1949, is hereby set aside and our opinion of that date is also set aside and withdrawn, and this opinion substituted therefor.

The judgment of the trial court is affirmed.